REVISED February 29, 2008

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 22, 2008

Charles R. Fulbruge III
Clerk

No. 06-40286

JAVIER CARRIZALES; EVA CARRIZALES,

Plaintiffs-Appellants,

v.

STATE FARM LLOYDS,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, and REAVLEY and SMITH, Circuit Judges.

PER CURIAM:

Javier and Eva Carrizales ("Plaintiffs") urge that Texas's standardized homeowners insurance policy with State Farm Lloyds ("State Farm") covers mold contamination resulting from a plumbing leak. The district court determined that it did not and entered summary judgment in favor of State Farm. Plaintiffs also challenge the district court's trial instruction to the jury that the failure to mitigate damages is a condition precedent to recovery. We affirm on the former conclusion but must reverse and remand for a new trial on

the jury instruction. Plaintiffs' duty to mitigate may reduce their damage recovery from the insurance company, but it is no affirmative defense to the company's liability.

I.

Plaintiffs hold a standardized insurance policy issued by State Farm: the Texas Standardized Homeowners PolicySSForm B ("Form B"). They filed a claim with State Farm for damages resulting from a plumbing leak in their garage. Because the cost of repair was less than their deductible, State Farm did not pay any benefits. Plaintiffs then submitted additional claims, and State Farm, after inspection and investigation, paid $107,724.30.

For the next year and a half, plaintiffs lived in an apartment, for which State Farm paid an additional $60,154.52 in living expenses. No significant repairs to the house were begun during that vacancy, and the air conditioner and other utilities were turned off. After filing suit, plaintiffs submitted three mold remediation claims, totaling more than $200,000, which were denied.

II.

Plaintiffs sued State Farm for alleged violations of the insurance code, breach of the insurance contract, and breach of the duty of good faith and fair dealing.[1] State Farm removed to federal court. The case was handled at one time or another by four district judges, including Judge Hinojosa, who granted in part and denied in part State Farm's motion for summary judgment, concluding that Form B excludes coverage for mold damage to the dwelling. Summary judgment was also granted on plaintiffs' common law and statutory good faith

---

[1] At least fourteen other suits, by other plaintiffs, were filed against State Farm concerning the mold issue.

claims.

The case proceeded to trial, shepherded by Judge Hudspeth. Based on Judge Hinojosa's summary judgment ruling, Judge Hudspeth excluded evidence of mold damage. At the close of evidence, the court formulated the jury charge so as to require mitigation of damages on the part of plaintiffs as a condition precedent to State Farm's liability. The jury found for State Farm.

III.

Plaintiffs challenge Judge Hinojosa's grant of summary judgment and Judge Hudspeth's determination that the law of the case precluded reconsideration of the mold issue. We do not reach the second question, because we determine that mold is not covered under Form B. Plaintiffs further challenge the verdict and the jury instruction requiring mitigation of damages as a condition precedent to recovery.

A.

We review a summary judgment de novo, applying the same standard as did the district court. United States v. Lawrence, 275 F.3d 193, 195 (5th Cir. 2001). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

Because the Texas Supreme Court has not addressed whether Form B covers mold damage that results from plumbing leaks, we make an "Erie guess" as to how the state supreme court would decide the issue. Erie R.R. v. Tompkins, 304 U.S. 64 (1938); Mayo v. Hartford Line Ins. Co., 354 F3d 400, 406 (5th Cir. 2004). Insurance contracts are subject to normal rules of contract construction.

Nat'l Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995). It follows that all parts of the contract must be read together so as to give effect to the parties' intent. State Farm Life Ins. Co. v. Beatson, 907 S.W.2d 430, 433 (Tex. 1995) (citing Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133 (Tex. 1994)). We must, however, be "particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract." Id.

Ambiguities in insurance contracts giving rise to two reasonable interpretations, one providing and the other denying coverage, are read contra proferentem and in favor of the insured. Puckett v. U.S. Fire Ins. Co., 678 S.W.2d 936, 938 (Tex. 1984). The principle of contra proferentum applies only if the contract is ambiguous. Id. Ambiguity is a question of law for the court. Sharp v. State Farm Fire & Cas. Ins. Co., 115 F.3d 1258, 1261 (5th Cir. 1997) (citing Nat'l Union, 907 S.W.2d at 520). The fact that the parties disagree as to the contract's coverage does not create an ambiguity. Id.

The primary issue involves the interaction of two provisions in Form B SSthe mold exclusion and the exclusion repeal provision. Because the interaction of the two provisions creates no ambiguity, mold is not covered.

Form B divides coverage into two discrete subdivisions, A and B.[2]

---

[2]     COVERAGE A (DWELLING)
We insure against all risk of physical loss to the property described in Section I Property Coverage, Coverage A (Dwelling) unless the loss is excluded in Section I Exclusions.

COVERAGE B (PERSONAL PROPERTY)
We insure against physical loss to the property described in Section I Property Coverage, Coverage B (Personal Property) caused by a peril listed below, unless

(continued...)

Coverage A covers "all risks" to the dwelling unless specifically excluded by Section I-Exclusions ("Section I"). Coverage B insures personal property against certain, enumerated perils, including, in subsection nine, damage from plumbing leaks ("Section 9"). Subheading 1 of Section I lists 11 exclusions, of which only the first eight are referenced in the exclusion repeal provision; mold is one of those exclusions.[3] The dispositive issue, then, is whether Coverage B's exclusion

---

[2] (...continued)
the loss is excluded in Section I Exclusions.

***

9. Accidental Discharge, Leakage or Overflow of Water or Steam from within a plumbing, heating or air conditioning system or household appliance.

A loss resulting from this peril includes the cost of tearing out and replacing any part of the building necessary to repair or replace the system or appliance. But this does not include loss to the system or appliance from which the water or steam escaped.

Exclusions 1.a through 1.h under Section I Exclusions do not apply to loss caused by this peril.

[3] Section I SS Exclusions

The following exclusions apply to loss to property described under Coverage A (Dwelling) or Coverage B (Personal Property) . . .

***

f. We do not cover loss caused by:

***

(2) rust, rot, mold or other fungi.

***

We do cover ensuing loss caused by collapse of building or any other part of the
(continued...)

repeal provision also repeals Section I with respect to Coverage A.

In Balandran v. Safeco Ins. Co., 972 S.W.2d 738, 749 (Tex. 1998), which plaintiffs argue compels a result in their favor, the court held that Section 9 repealed Section I's exclusion of foundation damage caused by a plumbing leak under Coverage A. The court advanced two reasons in reaching that decision. First, it opined that "the exclusion repeal provision could be located under Coverage B simply because that is the only place in the policy that the 'accidental discharge' risk is specifically described." Id. at 741.

The court's second conclusion followed closely from the first. Reading the entire contract so as to give meaning to every clause, the court viewed the exclusion repeal provision language to require an application to the dwelling because "exclusion 1(h) on its face applies only to damage to the dwelling."[4] Id. In other words, the exclusion repeal provision would never repeal 1.h unless it repealed it in respect to Coverage A. This result led to an ambiguity, because the insurers' argument against coverage was also reasonable. Applying contra proferentum, the court held that Form B covered foundation damage caused by plumbing leaks.

That line of reasoning is not persuasive in our case. The two conclusions are not really independent: The first makes sense only in light of the second. If the contract could have been read such that one part of it would not have been a nullity, the location of the exclusion repeal provision would not have been evidence in favor of coverage. As the dissent and the insurer urged, "[t]he word

---

[3] (...continued)
building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

[4] Provision 1.h begins: "We do not cover loss under Coverage A (Dwelling) . . ."

'loss' in the exclusion repeal provision can reasonably refer only to the type of loss at issue in Coverage B, which is personal property loss." Id. at 744 (Owen, J., dissenting). In other words, the location of the exclusion repeal provision in the contract would have controlled.

Because the second conclusion is ultimately controlling, we begin there. The Balandran court did not say that Section 9 of Coverage B repealed all covered exclusions for both itself and Coverage A. Rather, the court reasoned that with respect to 1.h, the words "[e]xclusions 1.a. through 1.h. under Section I Exclusions do not apply to loss by this peril" would be wholly inoperative, because exclusion 1.h by its terms applies only to Coverage A. Such is not the case with exclusion 1.f. Section 9's operation on exclusion 1.f gives effect precisely to what its location in the text of Form B implies: Mold damage to personal property caused by accidental discharge is covered.

To decide that Form B covers mold damage resulting from discharge, leakage, or overflow from plumbing would eviscerate the mold exclusion entirely. The most recent mold decision by the Texas Supreme Court confirms this.

We earlier certified to that court the question whether "the ensuing loss provision contained in Section I-Exclusions, part 1(f) . . . when read in conjunction with the remainder of the policy, provide[s] coverage for mold contamination caused by water damage that is otherwise covered by the policy." Fiess v. State Farm Lloyds, 392 F.3d 802, 811-12 (5th Cir. 2004). The court answered that question with a broadly phrased and unambiguous "no." Fiess v. State Farm Lloyds, 202 S.W.3d 744, 747 (Tex. 2006). The court said that "[w]hile other parts of the policy sometimes made it difficult to decipher, we cannot hold that mold damage is covered when the policy says it is not." Id. at 745.

First, the court noted that the words "we do not cover loss caused by mold" in Section I are plain and unambiguous. Id. Second, the ensuing loss provision did not rewrite the first line to say "we do too cover loss caused by mold." Id. With respect to what exactly the ensuing loss provision accomplished, the court reaffirmed that the "only reasonable construction of this clause was that it applied when an excluded risk was followed by an intervening occurrence that in turn caused an ensuing loss." Id. at 748. Notwithstanding Balandran, Fiess shows an obvious direction in the Texas Supreme Court's mold jurisprudence that is easier to reconcile with the result we reach in this case than with the result plaintiffs ask us to announce.

Water must be present for mold to grow. If every plumbing leak were a way around the mold exclusion, that exclusion would be meaningless. Although plaintiffs ask us to adopt just such a position, the Texas Supreme Court has said that we must be wary of turning an insurance contract into a maintenance agreement. See id. at 750. If Section 9 is expanded, as appellants in Fiess sought the ensuing loss provision to be expanded, the mold exclusion would be nugatory.

The answer to the Balandran court's first conclusion, then, is that although the exclusion repeal provision is in the section dealing with plumbing leaks, it does not follow that every exclusion is repealed with respect to plumbing leaks. Rather, we are to look at each provision and determine whether the court can still give effect to it in light of the exclusion repeal provision. As it stands, we cannot envision the role the mold exclusion would play if Coverage A (implicitly) as well as Coverage B (explicitly) covered mold damage resulting from plumbing leaks.

"The question in this case is not whether insurers should provide mold coverage in Texas, a public policy question beyond our jurisdiction as a court. The question instead is whether the language in an insurance policy provides such coverageSSno more and no less." Id. at 745. Here it does not.[5]

B.

Plaintiffs next contend that the jury instruction incorrectly required them to mitigate damages as a condition precedent to recovery. We review jury instructions for an abuse of discretion. See, e.g., Fiber Sys. Int'l, Inc. v. Roehrs, 470 F.3d 1150, 1158 (5th Cir. 2006). Courts are given wide latitude in formulating jury charges. United States v. Monroe, 178 F.3d 304, 307 (5th Cir. 1999). To establish error, the challenging party must first show the instruction as a whole "creates substantial doubt as to whether the jury was properly guided." Green v. Adm'rs of Tulane Educ. Fund, 284 F.3d 642, 659 (5th Cir. 2002).

The plaintiffs' only remaining claims before the jury were its breach of contract claims. Plaintiffs asserted State Farm breached the policy by (1) failing to adequately investigate losses claimed by plaintiffs; (2) failing to pay the cost of repair or replacement of the dwelling; (3) failing to pay the costs of repair or replacement of personal property; and (4) failing to pay additional living expenses. The jury charge contained a number of specific instructions, among which were

---

[5] Plaintiffs assert that the jury instruction excusing State Farm from paying costs or expenses from damages caused by mold was erroneous. Because the policy does not cover mold damage, that argument fails.

Conditions Precedent to Suit

> You are instructed that Plaintiffs' contract with Defendant State Farm Lloyds requires Plaintiff to give prompt written notice to Defendant of the facts relating to the claim. The contract also requires Plaintiffs to protect property from further damage and to make reasonable and necessary repairs to protect the property from further damage.

This instruction was based on State Farm's claimed affirmative defense of failure to mitigate damages.[6] The charge also contained a number of interrogatories related to the plaintiffs' duties under the policy, particularly the duty to mitigate damages, which it framed as an affirmative defense, that is, a condition precedent to recovery.[7] The plaintiffs argue that mitigation of damages was an issue that the jury should decide in determining the amount of damage to award, not a condition precedent—and hence affirmative defense—to liability. We agree.

---

[6] The district court's oral instructions to the jury directed the jurors only to reduce the amount of reimbursement plaintiffs were owed if the jury concluded plaintiffs failed to mitigate damages.

[7] Interrogatory 1 asked whether the jury found that the plaintiffs failed to give prompt notice of their claims. Answering Interrogatory 2 was conditioned on a "yes" answer to Interrogatory 1. Interrogatory 2 asked the jury whether they found that State Farm suffered prejudice from the failure to give prompt notice. If the jury found that the plaintiffs did not fail to give prompt notice or if they found that the failure did not prejudice State Farm, the jury would proceed to Interrogatory 3. Interrogatory 3 asked the jury whether the plaintiffs failed to mitigate their damages. Interrogatory 4 was conditioned on a "no" answer to Interrogatory 3. Interrogatory 4 asked whether the jury found that State Farm breached its contract with the plaintiffs and set out four possible theories for the breach. Interrogatory 5 was conditioned on a "yes" answer to any one of the theories contained in Interrogatory 4. Interrogatory 5 asked whether the breach was the proximate cause of any damages to the plaintiffs and set out the breach theories. Interrogatory 6 was conditioned on a "yes" answer to any one of the theories contained in Interrogatory 5. Interrogatory 6 asked what amount of damages, if any, would fairly and adequately compensate the plaintiffs for their loss and set out a blank for each breach theory. The jury answered "no" in response to Interrogatory 1 and "yes" in response to Interrogatory 3. No answers were given for the remaining interrogatories.

"Conditions precedent to an obligation to perform are those acts or events, which occur subsequently to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty." Hohenberg Bros. Co. v. George E. Gibbons & Co., 537 S.W.2d 1, 3 (Tex. 1976). "Where the intent of the parties is doubtful . . . the agreement will be interpreted as creating a covenant rather than a condition." Id. The policy provides:

SECTION 1 - CONDITIONS

* * *

3.      Duties After Loss.

        a.      Your Duties After Loss.   In case of a loss
                to covered property caused by a peril insured
                against, you must:

        * * *

                (3)     (a)     protect the property from further
                                damage.

                        (b)     make reasonable and necessary
                                repairs to protect the property.

        ***

                (11)    Suit Against Us.   No suit or action
                        can be brought unless the policy provisions
                        have been complied with . . . .

The policy language firmly requires homeowners to take steps to ensure prompt, correct adjustments of loss claims, but it does not expressly render these "conditions" as prerequisites to recovery. Consequently, Texas courts have concluded that while some of the "Duties After Loss" are conditions precedent,

11

others are not. See Progressive County Mut. Ins. Co. v. Trevino, 202 S.W.3d 811 (Tex. App. 2006) ("notice" provision is condition precedent to recovery); Beacon National Ins. Co. v. Glaze, 114 S.W.2d 1 (Tex. App. 2003) ("repair records" provision is not condition precedent to recovery); Lambrecht & Assocs. v. State Farm Lloyds, 119 S.W.3d 16 (Tex. App. 2003) ("police report" is not condition precedent to recovery). Even the decisions finding a condition precedent agree that prejudice is required for the term to preclude coverage. See Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173–74 (Tex. 1995). Texas courts have not yet ruled on whether the duty to mitigate damages is a condition precedent or an offset to reimbursement under the generic homeowners policy. We make an Erie guess on this question and conclude that mitigation of damages is an offset to damages rather than a condition precedent to recovery under Texas law.

In general, the duty to mitigate damages is an equitable doctrine, and means a reduction in the amount of damages, not an affirmative defense. See generally 25 C.J.S. Damages § 167; see also Hygeia Dairy Co. v. Gonzalez, 994 S.W.2d 220, 225 (Tex. App. 1999). In the insurance law context, two important authorities have described the duty as a condition precedent to recovery; but they also state that the breach of the duty relieves the insurer only of any increase in loss caused by the breach. See 6 APPLEMAN, INSURANCE LAW AND PRACTICE § 3890 (1972); 11 COUCH ON INSURANCE § 168:13 (1998); see also Higginbotham v. New Hampshire Indem. Co., 498 So.2d 1149, 1152 (La. App. 1986). Thus, the insurer still has the evidentiary burden of demonstrating the extent to which plaintiff-insured's breach of the duty to mitigate lessens the insurer's liability.

To the extent that a homeowner's duty of mitigation can be informed by other sources of Texas law, we note that Texas Rule of Civil Procedure 94 does not list mitigation of damages among the affirmative defenses that must be pled. See also Moulton v. Alamo Ambulance Serv. Inc., 414 S.W.2d 444, 448 (Tex. 1967) ("Failure to mitigate damages by care and treatment of personal injuries is not an affirmative defense which must be specifically pleaded to let in evidence of such failure and to entitle the wrongdoer to proper court instructions."). Furthermore, Texas applies the principle that the failure to mitigate damages is an offset against damages in the deceptive trade practices ("DTPA"), employment and landlord-tenant contexts. See 33 TEX. JUR. 3D Employer and Employee § 60 (employment); Regency Advantage Ltd. P'ship v. Bingo Idea-Watauga, Inc., 928 S.W.2d 56, 63 (Tex. App. 1995) (landlord-tenant); Pinson v. Red Arrow Freight Lines, Inc., 801 S.W.2d 14, 15 (Tex. App. 1990) (DTPA).

Contrary to State Farm's position, a holding that an insured's duty to mitigate is an affirmative defense to recovery under a homeowners insurance policy would be inconsistent with the above-noted decisions that only bar recovery for noncompliance with certain policy "conditions" (e.g., the duty to give timely notice) if the insurer is prejudiced. Conversely, reducing the homeowner's recovery for failure to mitigate is more analogous to the "prejudice" bar, as both standards relieve the insurer of its contractual responsibility only in proportion to the seriousness of the homeowner's default. Barring all recovery for failure to mitigate is an onerous consequence not in keeping with the rule that ambiguous policy provisions are construed in favor of the insured. See Kelley-Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998); see also Empire Fire & Marine Ins. Co. v. Brantley Trucking, Inc., 220 F.3d 679, 681

(5th Cir. 2000).

For all these reasons, we conclude that the failure to mitigate damages is an offset to recovery under the generic homeowners policy, and the district court erred and abused its discretion when it instructed the jury that mitigation was a condition precedent to recovery. Accordingly, we reverse and remand for a new trial related to plaintiffs' breach of contract claims.[8]

AFFIRMED in part, REVERSED in part, and REMANDED.

---

[8] Plaintiffs challenge the denial of their motion for new trial on the grounds that they reasonably mitigated their damages. This argument is moot in view of the previous discussion.

REAVLEY, Circuit Judge, concurring:

I concur in the judgment and agree with the holding that mold damage to the Carrizales' dwelling caused by plumbing leaks is not covered under Form B of the Texas Standardized Homeowners Policy issued by State Farm. I write in the hope that it will be useful to review the Texas law on mold damage under the current policy language.

As noted by the majority, the policy divides coverage into Coverage A (Dwelling), insuring against risk of physical loss to the dwelling, and Coverage B (Personal Property), insuring against loss to personal property caused by specific, enumerated perils. The policy specifically excludes from coverage all "loss caused by . . . mold . . . ." There are two policy provisions that could possibly negate this general mold exclusion. The first is the "ensuing loss" provision of the mold exclusion itself, which states in relevant part: "We do cover ensuing loss caused by . . . water damage . . . ."[1] Although mold is certainly caused by water, Texas law controls our decision and the Texas Supreme Court has refused to read the ensuing loss provision as providing coverage for damage in mold cases. See Feiss v. State Farm Lloyds, 202

---

[1] Exclusion 1.f of the policy states:

We do not cover loss caused by:

* * *

(2) rust, rot, mold or other fungi.

* * *

We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

15

S.W.3d 744, 750-51 (Tex. 2006).

The second provision that could negate the mold exclusion is the so-called "exclusion repeal" provision, which is located textually in Coverage B. This provision was not at issue in Feiss. See Feiss, 202 S.W.3d at 746 n.3. Subsection 9 of Coverage B affords coverage for loss to personal property from plumbing leaks. It then provides that "[e]xclusions 1.a through 1.h [including the mold exclusion of 1.f] under Section I Exclusions do not apply to loss caused by this peril."[2] It is clear from the plain language of this provision that the exclusion for loss to personal property from mold caused by plumbing leaks is repealed. In other words, the exclusion repeal provision reinstates coverage for mold damage to personal property that arises from a plumbing leak. The question is whether this provision applies to any loss or only to losses to personal property under Coverage B. The Carrizaleses would have this provision also repeal the exclusion to Coverage A for loss to the dwelling

---

[2] The policy states:

COVERAGE B (PERSONAL PROPERTY)

We ensure against physical loss to the property described in Section I Property Coverage, Coverage B (Personal Property) caused by a peril listed below, unless the loss is excluded in Section I Exclusions.

\* \* \*

9. Accidental Discharge, Leakage or overflow of Water or Steam from within a plumbing, heating or air conditioning system or household appliance.

\* \* \*

Exclusions 1.a through 1.h under Section I Exclusions do not apply to loss caused by this peril.

16

caused by mold arising from plumbing leaks.

The Carrizaleses rely on Balandran v. Safeco Ins. Co. of America, 972 S.W.2d 738, 740–41 (Tex. 1998), where the Texas Supreme Court held that the exclusion repeal provision repealed exclusion 1.h[3] for foundation damage in a dwelling and reinstated coverage even though the repeal provision was textually located within Coverage B. The Balandran court read the 1.h exclusion to apply to the limited dwelling damage of 1.h because of its concern with affording meaning to all policy language. See id. at 741 ("We must read all parts of the contract together, . . . striving to give meaning to every sentence, clause, and word to avoid rendering any portion inoperative. . . . [The insurer's] construction of the policy renders a part of the policy language meaningless." (internal citation omitted)). Because exclusion 1.h applies only to the limited dwelling and not to personal property losses, its inclusion in the list of provisions that are repealed would be meaningless if the repeal was not meant to reinstate coverage for that loss to the dwelling in Coverage A. Id. at 741. In other words, because exclusion 1.h does not apply to personal property, it would not be necessary to include 1.h in the repeal provision—unless the repeal provision reinstated coverage for that peril with respect to Coverage A.

In the instant case, the same concern for affording meaning to all policy language is not present. Unlike exclusion 1.h, the mold exclusion in 1.f

---

[3] Exclusion 1.h of the policy states in relevant part:

We do not cover loss under Coverage A (Dwelling) caused by settling, cracking, bulging, shrinkage, or expansion of foundations, walls, floors, ceilings, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools.

applies to both dwelling and personal property loss. Because mold can affect both real and personal property, the policy language is not left without meaning by concluding that the exclusion repeal provision reinstates coverage for mold only for losses to personal property in Coverage B. Rather, Coverage B appears specifically intended to provide greater coverage for such a loss to personal property. See Salinas v. Allstate Texas Lloyd's Co., 278 F. Supp. 2d 820, 823 (S.D. Tex. 2003).

The plaintiffs' argument for the exclusion repeal provision to reinstate coverage for exclusion 1.f with respect to the dwelling in Coverage A ignores the structure of the policy. Coverage B insures against risks to personal property from specific perils, one of which is plumbing leaks. The exclusion repeal provision expressly negates exclusion 1.f with respect to "loss caused by this peril." The "peril" referred to is plumbing leaks which affect the personal property of the insured. Other than Balandran, which is distinguishable, there is no reason apparent in the policy to apply the exclusion repeal provision to the dwelling in Coverage A.

The majority, and some district court opinions, have reached a similar result and found support in the Texas Supreme Court's decision in Feiss. Although Feiss found no mold coverage, it concerned a wholly separate part of the policy—the ensuing loss provision—and is inapposite.

This case involves a standard form policy mandated by the Texas Insurance Commissioner. See Feiss, 202 S.W.3d at 746; Balandran, 972 S.W.2d at 741; TEX. INS. CODE ANN. art. 5.35. If state regulators want to require the exclusion repeal provision to reinstate mold coverage for damage to a dwelling under Coverage A they could do so by simply amending the form

18

to read, "Exclusions 1.a through 1.h under Section I Exclusions do not apply to loss to the dwelling or personal property caused by this peril." As currently drafted, the exclusion repeal provision with respect to mold applies only to personal property.

Finally, I agree that if plaintiffs' proved damages not attributed to mold damage to the dwelling or to State Farm's refusal to cover that, and not to the plaintiffs' failure to mitigate same, the judgment must be reversed. I do not understand what part of the judgment we are affirming.

JERRY E. SMITH, Circuit Judge, dissenting in part:

I would affirm the judgment. I concur in the majority opinion in regard to the coverage issue, but I respectfully dissent from part III.B, regarding the duty to protect property, because the majority finds ambiguity in the contract where there is none; it misinterprets Texas caselaw and policy; and it misapplies the abuse of discretion standard.

I.

We review jury instruction for abuse of discretion. See, e.g., Fiber Sys. Int'l v. Roeher, 470 F.3d 1150, 1158 (5th Cir. 2006). A properly-objected-to instruction should not be reversed unless, as a whole, it does not correctly reflect the law. United States v. Stephens, 779 F.2d 23, 241 (5th Cir. 1985). Because here the instruction as a whole correctly reflects the law, we should affirm.

Fairness requires we begin with the text of the instruction. Interrogatory 3 reads, "Do you find from a preponderance of the evidence that Plaintiffs failed (1) to protect their property from further damage and (2) to make reasonable and necessary repairs to protect their property from further damage?" The jury answered "Yes," so judgment was entered in favor of the insurer ("State Farm").

It is important to quote the instruction as a whole, because it follows the duties imposed by the insurance contract on the plaintiffs, Javier and Eva Carrizales. The instruction tracks the language found in the "Duties After Loss" section of the contract, which provides in part as follows:

SECTION 1 - CONDITIONS

\* \* \*

3.      Duties After Loss.

a.      Your Duties After Loss.  In case of a loss to covered property caused by a peril insured against, you must:

(1)      give prompt notice to us of the facts relating to the claim.

(2)      notify the police in case of loss by theft.

(3)      (a)      protect the property from further damage.

(b)      make reasonable and necessary repairs to protect the property.

(4)      furnish a complete inventory of damaged personal property showing the quantity, description and amount of loss.  Attach all bills, receipts and related documents which you have that justify the figures in the inventory.

(5)      as often as this company reasonably requires:

(a)      provide this company access to the damaged property.

(b)      provide this company with pertinent records and documents requested and permit copies to be made.

(c)      submit to examination under oath and sign and swear to it.

\*\*\*

> (11)   Suits Against Us.   No suit or action can be brought unless the policy provisions have been complied with . . . .

II.

The issue is whether Duty (3) is a condition precedent.  Because the Texas Supreme Court has not ruled on that issue, we must make an "Erie-guess" as to what that court would do.  Mayo v. Hartford Life Ins. Co., 354 F.3d 400, 406 (5th Cir. 2004).

The proper starting point is the text of the contract, because insurance contracts are subject to the normal rules of contract construction.  Nat'l Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995).  "The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument."  Id. (emphasis added).  All parts of the contract are read together to give effect to the intent of the parties.  State Farm Life Ins. Co. v. Beatson, 907 S.W.2d 430, 433 (Tex. 1995).  The majority, in its discussion of mold, recognizes this and goes so far as to quote the Texas Supreme Court for the proposition that we are to be "particularly wary of isolating from its surrounding or considering apart from other provisions a single phrase, sentence, or section of a contract" (quoting Beatson, 907 S.W.2d at 433). The majority, however, seems unmoved by the text of the contract[1] with regard to the "Duties After Loss" and, instead of

---

[1] The contract speaks of a duty to "protect property from further damage" and "make reasonable and necessary repairs to protect the property."  The majority speaks of the duty to mitigate damages.

discussing it, immediately turns to what we do in the face of an ambiguity.[2]

"Conditions precedent to an obligation to perform are those acts or events, which occur subsequently to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty." Hohenberg Bros. Co. v. George E. Gibbons & Co., 537 S.W.2d 1, 3 (Tex. 1976). The text of the instant contract is without ambiguity: Duty (11) requires insureds to comply with the "Duties After Loss" section before suing; otherwise, "[n]o suit or action can be brought." In other words, before State Farm was required to pay under the contract, and therefore before it could breach the contract, plaintiffs were required to comply with Duty (3). The majority, to the contrary, reads Duty (3) out of its context and thereby reads the compliance provision out of the contract entirely.

There is no ambiguity in the requirement to protect property from further damage, so I would give effect to the intent of the parties and would hold Duty (3) to be a condition precedent to suit. The majority does not say why it departs from the plain language of the contract and fails to give effect to the intent of the parties.

## III.

Maybe the key that unlocks the majority's anti-textualist reading of the contract is to be found in Texas cases and the policy underlying them. The Texas Supreme Court has been fairly silent on the "Duties After Loss" section

---

[2] The majority also notes that "[b]arring recovery for failure to mitigate is an onerous consequence not in keeping with the rule that ambiguous policy provisions are construed in favor of the insured." The law, however, requires that we favor insureds in ambiguous situations, not in onerous ones.

except with respect to the notice requirement.  When one looks to Texas caselaw, what emerges is a story quite different from the majority's.

In Delta Lloyds Insurance Co. v. Southwest Savings Association, 559 S.W.2d.372, 375 (Tex. Civ. App.SSDallas 1977, writ ref'd n.r.e.), the

> policy required the insured to 'give immediate notice to this Company of any loss (and) protect the property from further damage. . . .' Special issue number twelve was submitted in the following form:
>
> Do you find from a preponderance of the evidence that the loss in question was caused, directly or indirectly, by the neglect of Plaintiff to use all reasonable means to save and preserve the property at and after a loss that the property may have sustained prior to the loss in question and subsequent to December 15, 1973?
>
> ANSWER: 'We Do' or 'We Do Not'
>
> ANSWER: We do.
> We hold that this finding establishes a breach of the policy by Southwest and, therefore, precludes its recovery.

This decision from a state court of appeals is directly on point and is not an aberration from other Texas courts' characterization of the remaining "Duties After Loss," but the majority overlooks it.

The first duty the contract imposes on insureds requires that they "give prompt notice to [the insurance company] of the facts relating to the claim." Texas courts have held this requirement is a condition precedent.[3]

---

[3] E.g., Caddell v. Travelers Lloyds, 2007 Tex. App. LEXIS 4296 (Tex. App.SSTexarkana June 1, 2007, no pet.); cf. de Laurentis v. United Servs. Auto. Ass'n, 162 S.W.3d 714, 720-21 (Tex. App.SSHouston[14th] 2005, pet. denied) (discussing notice and inventory requirements (continued...)

Insureds are next required to "notify the police in case of loss by theft." The majority cites Lambrecht & Assoc. v. State Farm Lloyds, 119 S.W.3d 16 (Tex. App.SSTyler 2003, no pet.), for the proposition that this section is not a condition precedent. There insureds filed a claim for lost income because a hacker had unlawfully broken into their computer system and released a virus. Id. at 19. State Farm argued that, because the insureds had failed to notify the police, they were barred from recovery. The court held that "this provision in the policy does not create a condition precedent because it does not condition payment of a covered loss on contacting the police if a law was broken." Id. at 26. The question was not whether contacting the police in case of loss by theft was a condition precedent; instead, and quite reasonably, the court merely refused to extend the police notice requirement to all instances of law-breaking.

The majority cites Beacon National Insurance Co. v. Glaze, 114 S.W.3d 1 (Tex. App.SSTyler 2003, pet. denied), for the proposition that the record-keeping requirement is not a condition precedent. In that case, the appeals court upheld the trial court's determination that whether insureds needed to submit written records was ambiguous and therefore was a not a condition precedent under the principle of contra proferentum. Id. at 4. The insurance company contended that insureds had a duty to provide written documentation and receipts of repair expenses. Id. at 2. The insureds countered that Duty (5)(c) seemed to allow oral statements under oath in addition to receipts and written documentation. Id at 4. The court of appeals agreed that the

---

[3] (...continued)
in light of waiver of a condition precedent).

requirement was ambiguous with respect to what kinds of documentation were required. The court therefore held that failure to provide written documentation was not a condition precedent, because insureds arguably could satisfy the duty with a statement under oath. Id. Beacon does not stand for the proposition that record-keeping is not a condition precedent, but only that the method of keeping said record is ambiguous.

The next provision requires insureds to provide a complete inventory of damaged personal property. In de Laurentis, 162 S.W.3d at 721, the court said that "[w]e conclude the Insurer waived the requirement for the personal property inventory . . . . The condition precedent having been waived, the Policy holder is not barred from recovery . . . ." If an insurer can waive a condition precedent, it necessarily follows that what was waived was a condition precedent. In other words, the inventory provision too is a condition precedent.

The final section requires insureds to "submit to examination under oath and sign and swear to it." This is a condition precedent. Trahan v. Fire Ins. Exch., 179 S.W.3d 669, 674 (Tex. App.SSBeaumont 2005, no pet.).

The caselaw being unhelpful to it, the majority turns to treatises, but even here the panel has no friends. The duty to protect property is "absolute, and is a condition precedent to recovery." 6 JOHN A. APPLEMAN, INSURANCE LAW AND PRACTICE § 3980 (1972).

The majority reasons, however, that the duty is not a condition precedent but an offset to damages. The majority bases this notion in general contract principles, the Texas Rules of Civil Procedure, and the Texas Deceptive Trade Practices Act. It must do this because the contract, the cases, and

the treatises all disagree with its position.

No case relied on by the majority declares any provision of the "Duties After Loss" section not to be a condition precedent, and the secondary literature indicates that it is. A district judge, surveying a field in which cases addressing the issue all point in the direction that the section as a whole contains conditions precedent, would not expect to commit reversible error by assuming another provision in the same section was also a condition precedent. The majority does not see it that way.

## IV.

If the duty to protect property is a condition precedent, what is the effect of plaintiff's failure to satisfy it? The breach of a condition precedent "voids policy coverage." Stonewall Ins. Co. v. Modern Exploration, Inc., 757 S.W.2d 432, 435 (Tex. App.SSDallas 1998, no writ). The majority instead says that "a holding that an insured's duty to mitigate is an affirmative defense to recovery under a homeowners insurance policy would be inconsistent with the above-noted decisions that only bar recovery for noncompliance with certain policy 'conditions' (e.g., the duty to give timely notice) if the insurer is prejudiced." But if the majority is correct, consistency should dictate adding a prejudice requirement to the timely-notice "condition" as well.[4] Overlooking the

---

[4] The prejudice requirement has been discussed only in the context of the notice provision. See, e.g. PAJ, Inc. v. Hanover Ins. Co., 2008 Tex. LEXIS 8, at *18 (Tex. 2008). Even then, the prejudice requirement does not extend to all insurance policies. Id. at *17 (distinguishing "occurrence" liability policies from "claims-based" liability policies.) It is incongruous to take a requirement that has been limited, for the most part, to a requirement in some liability polices and effectively require it in all casualty policies. Cf. Ridglea Estate Condo. Ass'n v.

(continued...)

need for consistency, the majority instead fashions an offset remedy.

Even with a prejudice requirement, the duty of notice is still a complete bar to recovery. A showing of prejudice functions as a bar to recovery and does not offset damages. Harwell v. State Farm Mut. Auto Ins. Co., 896 S.W.2d 170, 173-74 (Tex. 1995). Additionally, there are no other require-ments in the contract that have a remedy like that fashioned by the majority; certainly, the majority points to no such examples.

In summary, the majority bears the burden of demonstrating why of all the requirements in the "Duties After Loss" section, the failure to protect property does not bar recovery completely but is only an offset to damages. Alternatively, the majority does not argue that prejudice should be extended to the situation at bar, a showing of which would still bar recovery.[5]

For these reasons, I respectfully dissent.

---

[4] (...continued)
Lexington Ins. Co., 415 F.3d 474, 479-80 (5th Cir. 1995) (on petition for rehearing) (extending the prejudice requirement to the notice provision in a casualty policy, but noting that the preju-dice requirement does not extend to all insurance policies.).

[5] I do not agree that a showing of prejudice should be necessary for the duty to protect property to bar any recovery. I point this out only because to the extent Texas courts have fashioned any additional steps, they have done so with respect to notice and only by requiring a showing of prejudice.