Lewis TRAYLOR, Plaintiff-Appellant,

v.

CITY OF AMARILLO, TEXAS, et al.,
Defendants-Appellees.

William R. CURTIS, Plaintiff-Appellant,

v.

CITY OF AMARILLO, TEXAS, et al.,
Plaintiffs-Appellees.

No. 73-2047.

United States Court of Appeals,
Fifth Circuit.

April 19, 1974.

Larry Watts, Houston, Tex., for plaintiff-appellant.

Bruce Aycock, City Atty., City of Amarillo, Harlow L. Sprouse, Joe Harlan, Amarillo, Tex., for City of Amarillo.

Mac W. Hancock, III, Amarillo, Tex., for defendants-appellees.

Before THORNBERRY, GOLDBERG and INGRAHAM, Circuit Judges.

GOLDBERG, Circuit Judge:

■■ Exercising its power to abate unrepaired nuisances, the City of Amarillo, Texas, demolished without compensation property belonging to each of the plaintiffs-appellants. They filed separate civil rights suits in federal court against the city, the mayor, the city manager, and four members of the City Commission, challenging the constitutionality of the city's actions seeking monetary, injunctive, and declaratory relief. The suits were consolidated for trial and have remained so on this appeal. A jury was empanelled, but at the close of the evidence on liability the court granted plaintiffs' motion to submit all issues except those of compensatory and punitive damages to the court without a jury. The court then granted defendants' motion for directed verdict, based on plaintiffs' "failure to prove facts constituting a deprivation of federally protected rights," and denied all requested relief.[1] From that adverse judgment plaintiffs appeal. Finding no substantial error in the proceedings below,[2] we affirm.

1. Traylor v. City of Amarillo, N.D.Tex.1973, 354 F.Supp. 1143.

2. The district court concluded that Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492, barred plaintiffs' claim for monetary relief against the city under 42 U.S.C. §§ 1983, 1985(3), and held that plaintiffs had failed to establish a constitutional wrong justifying equitable relief. Subsequent to the district court's decision, the Supreme Court in City of Kenosha v. Bruno, 1973, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109, held that claims for equitable relief are also outside the ambit of § 1983, and presumably by analogy outside § 1985 as well. Since the court below denied equitable relief, the decision in *City of Kenosha* does not alter the result below.

Plaintiffs also alleged jurisdiction under 28 U.S.C. § 1331. Although the district court did not mention this jurisdictional basis in its opinion, our review of the record convinces us that plaintiffs met the requirements necessary to invoke the general federal question jurisdiction. If the court had found any violation of plaintiffs' constitutional rights, § 1331 would have supported a claim against the city. See Mosher v. City of Phoenix, 1932, 287 U.S. 29, 53 S.Ct. 67, 77 L.Ed. 148; Foster v. City of Detroit, 6 Cir. 1968, 405 F.2d 138.

As to the individual defendants, the district court apparently concluded that they were not liable for two reasons. First, the ordinances under which they proceeded were constitutional, both facially and as applied. Second, even had there been constitutional defects in the ordinances, the individual defendants had acted in good faith in discharge of their official duties, within the scope of their authority under the ordinances and state law, and had neither conspired nor acted maliciously, arbitrarily, capriciously, or tortiously. These findings of fact are not disputed on appeal, and they are certainly not clearly erroneous. We have concluded that the reasons given are sufficient to support a denial of the requested relief. See generally Pierson v. Ray, 1967, 386 U.S. 547, 554–555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288, 295; Curry v. Gillette, 6 Cir. 1972, 461 F.2d 1003, cert. denied, 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492; Whirl v. Kern, 5 Cir. 1968, 407 F.2d 781, cert. denied, 1969, 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177; Norton v. McShane, 5 Cir. 1964, 332 F.2d 855, cert. denied, 1965, 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274;

■ On appeal appellants focus their attack on the district court's conclusion that the demolition of their property under the procedures outlined in certain city ordinances did not violate the Fourteenth Amendment's guarantee against deprivations of property without due process of law. This conclusion, they argue, was incorrect for three reasons, which we treat seriatim.

Appellants do not contest the basic constitutionality of the demolition remedy provided in the city ordinances for abating nuisances.[3] Instead, they argue that this particular exercise of municipal power can be reconciled with the constitutional guarantee of due process only if a judicial determination that the property is indeed a nuisance or in violation of city regulations precedes its destruction. Appellants rely on Yates v. Milwaukee, 77 U.S. (10 Wall.) 497, 19 L.Ed. 984 (1871); Crossman v. City of Galveston, 1923, 112 Tex. 303, 247 S.W. 810, and Stockwell v. State, 1920, 110 Tex. 550, 221 S.W. 932. We do not think these decisions support the constitutional proposition appellants advance.

In Yates the Supreme Court held that a city could not simply pass an ordinance declaring particular property to be a nuisance and ordering its abatement. The city had apparently made no specific findings that the property was a nuisance or injurious to the public, and the Court noted the absence of "any general laws either of the City or of the State, within which a given structure can be shown to be a nuisance . . . ." 77 U.S. at 505, 19 L.Ed. at 986. In the case at bar, on the other hand, the city proceeded under authority of state law and pursuant to local ordinances which not only explicitly define the procedures to be followed, but also outline with some specificity the conditions under which property is subject to demolition. This is a far cry from the

ad hoc, summary action decried in *Yates*.

The two Texas cases cited by appellants are troubling, for together they appear to hold that property which is neither a nuisance per se nor a nuisance under the common law may be destroyed only after a judicial declaration that the property is in fact a nuisance. Whatever the status of these decisions as statements of the law of Texas, we do not believe that such a requirement is imposed by the federal constitutional guarantee of due process.

The two cases are old; and, as Professor Mandelker has noted, such cases "were decided at a time when the constitutional basis for public regulatory powers was more primitive, and . . . take as their basic premise the origins of the demolition power in equity actions against public nuisances." Mandelker, *supra* note 3, at 646. Moreover, both cases explicitly rely on the venerable proposition that legislation may not declare to be a nuisance any use or condition which was not a nuisance at common law. In Village of Euclid v. Amber Realty Co., 1926, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, the Supreme Court partially abandoned this proposition in the context of zoning, holding that "[t]he ordinance now under review, and *all similar laws and regulations*, must find their justification in some aspect of the police power, asserted for the public welfare." 272 U.S. at 387, 47 S.Ct. at 118, 71 L.Ed. at 310 (emphasis added). The Court emphasized that although the common law of nuisance might furnish the "helpful aid of its analogies in the process of ascertaining the scope of the police power," it would not be controling. *Id.*

In Goldblatt v. Town of Hempstead, 1962, 369 U.S. 590, 82 S.Ct. 987, 8 L. Ed.2d 130, the Court again relied on the police power analysis in testing the con-

---

Nelson v. Knox, 6 Cir. 1958, 256 F.2d 312; Bennett v. Gravelle, D.Md., 323 F.Supp. 203, aff'd, 4 Cir. 1971, 451 F.2d 1011, cert. dism'd, 1972, 407 U.S. 917, 92 S.Ct. 2451, 32 L.Ed. 2d 692.

3. *See generally* Mandelker, Housing Codes, Building Demolition, and Just Compensation: A Rationale for the Exercise of Public Powers Over Slum Housing, 67 Mich.L.Rev. 634 (1969).

stitutional validity of property use regulations, this time in the context of an ordinance controlling dredging and pit excavating on property within the town limits. The Court explained the term "police power" as follows:

> Except for the substitution of the familiar standard of "reasonableness," this Court has generally refrained from announcing any specific criteria. The classic statement of the rule . . . is still valid today:
>
> > "To justify the State in . . . interposing its authority in behalf of the public, it must appear— First, that the interests of the public . . . require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals."
>
> Even this rule is not applied with strict precision, for this Court has often said that "debatable questions as to reasonableness are not for the courts but for the Legislature . . . ."

369 U.S. at 594–595, 82 S.Ct. at 990, 8 L.Ed.2d at 134.

■ We think the instructions from the Supreme Court are clear. Even though it may be preserved intact in the amber of state law, for the pur-poses of marking the limits of federal constitutional due process the common law of nuisance must be considered a jurisprudential artifact, interesting but not controlling. The district court in the case *sub judice* concluded that the challenged ordinances are a legitimate and compelling exercise of the city's police power, and we see no reason to question that conclusion. The court also found adequate procedural safeguards in the notices, hearing, and opportunity for compliance provided by the ordinances, and again we agree. Where the control is reasonable and the actions otherwise accord procedural fairness, we do not believe that the United States Constitution requires that a judicial determination precede demolition of property found to be a nuisance.[4]

■ Appellants next argue that the operative words of the city ordinance defining property subject to the remedies of repair or demolition are so vague that men of common intelligence must necessarily guess at the statute's meaning and differ as to its application.[5] We find this argument unpersuasive. General descriptive words are practically unavoidable in view of the difficulty of anticipating every condition that might make a building liable to the remedies of repair or demolition. The Amarillo ordinances minimize the danger inherent in this type of regulation by specifically

---

4. We intend no reflection on the continuing validity under state law of the Texas decisions cited by appellants, nor do we mean to intimate any views on the merits of claims they might have under state law. *See* City of Houston v. Lurie, 1949, 148 Tex. 391, 224 S.W.2d 871; City of Carthage v. Allums, 398 S.W.2d 799 (Tex.Civ.App.—Tyler 1966, no writ); Newton v. Town of Highland Park, 282 S.W.2d 266 (Tex.Civ.App.—Dallas 1955, writ ref'd n. r. e.). The right to have state officials follow state law is usually and historically a right enforced in state courts, not in federal courts, and under the facts of the case we do not believe that any error that might have occurred in the administration of state law is cognizable under the Fourteenth Amendment's due process clause. *See* Wallace v. City of Altus, 10 Cir. 1972, 465 F.2d 420; Bradford Twnshp. v. Illinois State Toll Highway Authority, 7 Cir. 1972, 463 F.2d 537, cert. denied, 409 U.S. 1047, 93 S.Ct. 518, 34 L.Ed.2d 499. Appellants have made no argument that the state courts were unavailable to them; nor have they argued, here or below, that the trial court should have exercised pendent jurisdiction in order to decide the question of whether defendants violated any rights guaranteed by state law. *See* Moor v. County of Alameda, 1973, 411 U.S. 693, 709–718, 93 S.Ct. 1785, 1796–1800, 36 L.Ed.2d 596, 610–614.

5. Appellants point especially to the terms "dangerous structure," "structurally unsafe," "fire hazard," "inadequate maintenance," "dilapidation," "obsolescence," and "abandonment," contained in Section 5–5(c) of the ordinances under attack.

incorporating into the City Code portions of the Uniform Building Code, which outline in detail the requirements for maintaining structures in a safe and habitable condition. Moreover, any claim that appellants had to guess at the meaning of the ordinances is belied by the more than adequate notice they received of both the specific deficiencies in their properties and the repairs necessary to bring the properties into compliance with the law. Indeed, both appellants made at least preliminary efforts, later abandoned, to comply and make the ordered repairs.[6]

■ Finally, appellants insist that the hearing granted to property owners before the City Commission is defective because the Commission ·is not allowed to find in the property owner's favor. They point to Section 5–6(f), which provides *inter alia* that the City Commission

> may order the building official to proceed with the work specified in such notice or order such building or structure demolished or removed and may cause the cost of such work to be paid and levied as a special assessment against the property. . . .

Appellants argue that this portion of the ordinance gives the Commission three alternatives, but not the fourth alternative of reversing the finding that the building is a nuisance. The city insists that the words of the ordinance do allow for the fourth alternative, though they concede that it is rarely used. We decline appellants' invitation to apply the hoary maxim of statutory interpretation *expressio unius est exclusio alterius* (the express mention of specific things implies the exclusion of other things not mentioned). The permissive "may" followed by three alternatives does not, we think, mean that the Commission is denied the authority to find in favor of the property owner.

We have considered this case with some care, for the uncompensated demolition of a citizen's property is a rather dramatic and drastic exercise of municipal power. The pathway the municipality must travel before it reaches this last step in its effort to protect the health, welfare, and safety of its citizens is hedged with constitutionally imposed restraints, and the city must tread with caution. Despite the efforts of appellants, however, we have been unable to detect any constitutional land mines in the road taken by the city of Amarillo.

Affirmed.

---

6. At oral argument appellants contested the district court's findings that Curtis did not dispute the conclusions regarding deficiencies in his property and that Traylor received notice of the hearing before the City Commission. However, they have pointed to nothing beyond mere allegations that would cause us to believe the contested findings were clearly erroneous.