# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 31, 2012

Lyle W. Cayce
Clerk

No. 11-50333

PAUL CHANCE KINNISON,

Plaintiff – Appellee

v.

CITY OF SAN ANTONIO,

Defendant – Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:08-CV-421

Before REAVLEY, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

The City of San Antonio, Texas, (the "City") appeals from the district court's grant of summary judgment in favor of Paul Chance Kinnison on his Fourth and Fourteenth Amendment claims brought under 42 U.S.C. § 1983 and subsequent jury-determined damages award. On the state of the record, we conclude that Kinnison did not establish that the City's actions were unreasonable as a matter of law. We therefore VACATE the judgment below and REMAND for proceedings consistent with this opinion.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-50333

## I. Facts and Procedural History

On April 8, 2008, Alice Guajardo, a Dangerous Premises Inspector for the City, investigated a house and accessory structure at 332 East Myrtle (the "Property") in response to a dangerous-premises hotline phone call. Guajardo's investigation revealed that the Property had fire damage to and deterioration of its roof, walls, and foundation. She determined that the Property "pos[ed] [an] imminent danger to public health and safety," and she reported the Property to Ramiro Carrillo, the City's Senior Building Inspector. Carrillo's inspection confirmed Guajardo's initial findings, and he determined that the Property's "extremely poor structural condition" required "immediate demolition."

Guajardo facilitated the demolition pursuant to San Antonio Code of Ordinances § 6-175 (the "Ordinance"). At the time of Guajardo's inspection, the Ordinance provided:

**Sec. 6-175. Emergency cases; summary abatement by city officials.**

(a)  In cases where it appears to the code compliance director, the fire chief, or the director of development services, that due to one or more structural conditions threatening the structural integrity of a building or structure, there is clear and imminent danger to the life, safety or property of any person unless a dangerous building or structure, as defined in this article, is immediately repaired or demolished, especially in cases where such a very dangerous building or structure, is located within one thousand (1,000) feet of a public or private elementary school, middle school, high school, or a state recognized day care center, anyone of those officials (the official) shall execute the immediate vacation and or repair or demolition of such very dangerous building or structure, regardless of the date of its construction. Such summary action shall require concurrence from at least one other of the aforesaid officials. In the case of summary demolition, concurrence of the director of development services shall be required. Such concurrence shall include a determination that under the circumstances no other abatement procedure is reasonably available except demolition. The official taking action shall thereafter immediately provide notice to the [Dangerous Structures Determination Board ("DSDB")], of the

2

accomplished abatement; and to the owner and lienholders/mortgagees of said dangerous building. All costs, including asbestos and special or hazardous waste removal/disposal, of such emergency summary repair, vacation, or demolition of such dangerous building shall be collected in the manner provided by law.

(b) The foregoing emergency abatement action shall be executed not later than seventy two (72) weekday hours, exclusive of weekends and holidays, after the official views the subject building or structure.

(c) The foregoing emergency abatement action is hereby acknowledged as being outside state statutory prescriptions. The authority for this section is asserted under the City of San Antonio Charter as power of a home-rule city, so provided by the constitution of the State of Texas.

(d) Upon ordering and executing emergency abatement by demolition, the city official responsible shall make an appropriate affidavit evidencing his/her actions. Copies of the affidavit shall be maintained among the official records of the respective official's department and in the minutes records of the DSDB for two (2) years.

Guajardo identified the Property's owner as the Deepak Land Trust ("Deepak"),[1] took photos and a video of the Property, prepared certain City inspection forms, mapped the Property's location to the nearest school, submitted an environmental survey report, arranged for the cessation of gas and electric service, and notified the City's Historic Preservation Office and the relevant City Councilwoman. Guajardo also informed Deepak's trustee, who reported that he had recently sold the Property, but did not have contact information for its new owner. Guajardo also checked if anyone had filed a work permit for the Property, but the last such permit dated to 2006. Strangely, in

---

[1] Bexar County Appraisal District records "current" to April 6, 2008, showed that Deepak owned the Property.

No. 11-50333

Kinnison's view, Guajardo never examined county deed records where, Kinnison contends, she would have found a newly recorded deed reflecting the recent sale of which she had been advised.

Per the Ordinance, the City's Director of Development Services and Director of Housing and Neighborhood Services executed affidavits declaring the Property to be a "clear and imminent danger to the life, safety, and/or property necessitating an immediate demolition."[2]  On April 17, 2008, a demolition crew arrived at the Property, encountering a contractor that Kinnison had hired to do foundation repair work.  Regardless, the Property was demolished.

Kinnison subsequently filed the underlying suit in state court, bringing a host of state and federal claims.  The City removed.  Ultimately, the district court granted summary judgment in favor of Kinnison only on his § 1983 claims for violations of his Fourth Amendment right to be free from unreasonable seizures and his Fourteenth Amendment procedural due process rights, dismissing or granting summary judgment for the City on the remaining claims. The parties dispute here only the claims on which Kinnison prevailed.  A jury trial on damages resulted in a $52,000 award in Kinnison's favor.  The district court denied the City's post-trial motions, and the City timely appealed.

## II. Standard of Review

This court reviews a grant of summary judgment *de novo*, applying the same standard as the district court.  *Gelin v. Hous. Auth. of New Orleans*, 456 F.3d 525, 527 (5th Cir. 2006).  Summary judgment is appropriate if the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A factual dispute is 'genuine' where a reasonable [factfinder] would return a verdict for the non-moving party."  *Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273,

---

[2] Kinnison does not challenge that these officials are two of the three decisionmakers envisioned by the Ordinance.

282 (5th Cir. 2003) (citation omitted). "An issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In considering a summary judgment ruling, this court views the evidence in the light most favorable to the nonmoving party. *United Fire & Cas. Co. v. Hixson Bros.*, 453 F.3d 283, 285 (5th Cir. 2006). "Unsubstantiated assertions, improbable inferences, and unsupported speculation," however, "are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).

### III. A Factfinder Should Determine Whether the City Violated Kinnison's Constitutional Rights

#### A. *The City Waived* Monell

Under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), and its progeny, the fact that a constitutional violation occurred is ordinarily not enough to trigger municipal liability.[3] Municipal liability also requires proof of an "official policy," a "final" policymaker, and policymaker "knowledge" of, or "deliberate indifference" to, a risk of constitutional violations. *See, e.g.*, *Burge v. St. Tammany Parish*, 336 F.3d 363, 369-73 (5th Cir. 2003); *Piotrowski v. City of Houston*, 237 F.3d 567, 578-83 (5th Cir. 2001). Here, however, the City rested its entire § 1983 defense on whether Kinnison established a constitutional violation, essentially collapsing the municipal-liability inquiry into a single, dispositive question.[4] Indeed, the City failed to

---

[3] *See also City of Canton v. Harris*, 489 U.S. 378 (1989); *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988); *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).

[4] The City briefly contended in its motion to alter or amend judgment that Kinnison "nowhere demonstrated a policymaker or an official policy as a matter of law entitling him to summary judgment" and that there was insufficient evidence "for a reasonable jury to have concluded that the City was liable on these elements under 42 U.S.C. § 1983." That was too little, too late. *See, e.g.*, *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) ("Motions for a new trial or to alter or amend a judgment must *clearly establish* either a manifest error

No. 11-50333

cite *Monell* in its briefs on appeal and expressly disavowed at oral argument—in response to several questions—any reliance on the case and its principles. We first determine, then, whether *Monell's* requirements can be waived.

Although our circuit has not squarely addressed the issue, the weight of circuit authority suggests that it can. *See Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 491-99 (6th Cir. 2008) (affirming summary judgment for plaintiff where the municipality had "abandoned" deliberate-indifference arguments); *Kelly v. City of Oakland*, 198 F.3d 779, 785 (9th Cir. 1999) (affirming § 1983 liability where municipality first raised *Monell* in reply to motion for new trial; the argument, "if properly placed in issue, would have affected the course of the jury trial"); *Morro v. City of Birmingham*, 117 F.3d 508, 514-16 (11th Cir. 1997) (affirming summary judgment for plaintiff even though it was "extremely doubtful" that the identified policymaker was a "final" policymaker; had the municipality raised *Monell*, it could have been granted "judgment as a matter of law . . . early in the proceedings").[5]

We join these courts in concluding that, where the municipality in question has clearly and unequivocally waived the protections of *Monell*, we can

---

of law or fact or must present newly discovered evidence. These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued.") (internal quotation marks and citation omitted; emphasis added). This is particularly true where, as here, the City unequivocally waives the argument on appeal.

[5] *But see Smith v. Chi. Sch. Reform Bd. of Trs.*, 165 F.3d 1142, 1149 (7th Cir. 1999) ("*Monell* does not create a 'defense.' It identifies an element of a plaintiff's claim, so the burden is on the plaintiff to demonstrate the essential policy or custom." (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997))).

The Seventh Circuit nonetheless allows municipalities to affirmatively waive certain aspects of *Monell*. *See, e.g.*, *Evans v. City of Chicago*, 513 F.3d 735, 741 (7th Cir. 2008) ("Thus, the City waived its right under *Monell* not to be held liable in damages without proof that the City by its 'policy or custom' caused the alleged constitutional violation.") (citation omitted); *Lopez v. City of Chicago*, 464 F.3d 711, 717 n.1 (7th Cir. 2006) ("The City . . . entered a *Monell* waiver consenting to entry of judgment against it in the event 'the finder of fact in this case finds that any City of Chicago employee violated Plaintiff's rights under the Constitution.'").

accept that waiver and treat those elements as satisfied.[6]  Municipalities once enjoyed virtually absolute immunity from § 1983 liability.  *See Monell*, 436 U.S. at 663 (overruling *Monroe v. Pape*, 365 U.S. 167 (1961) (holding that municipalities were not "persons" subject to § 1983)).  Although *Monell* refined this potentially draconian doctrine to permit recovery when "action pursuant to official municipal policy of some nature caused a constitutional tort," *id.* at 691, it preserved municipal immunity against other claims.  *Id.* at 691-94.

If the states may waive bedrock constitutional protections such as sovereign immunity, however, we see no reason to prohibit cities within a state from affirmatively discarding protections of statutory and judicial creation.  *Cf. Clark v. Barnard*, 108 U.S. 436, 447 (1883) ("The immunity from suit belonging to a state, which is respected and protected by the constitution within the limits of the judicial power of the United States, is a personal privilege which it may waive at pleasure . . . .").  It also makes no difference whether waiver here more properly concerns a question of law or fact.  *See Morro*, 117 F.3d at 516 n.3 ("We note that the City's failure to preserve its *Monell* defense for trial is not excused by the fact that . . . the issue of final policymaker status is a legal question for the court, not the jury.  Counsel may waive the right to have an issue decided by failing to identify the issue to the court . . . regardless of whether the issue is a legal or factual one.").  Accordingly, as below, the City's liability rises and falls with whether Kinnison can establish a constitutional violation.

### B. Fourteenth Amendment Procedural Due Process Claim

The Supreme Court has "described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.'"  *Cleveland Bd. of*

---

[6] *Cf. Wood v. Milyard*, 132 S. Ct. 1826, 1830 (2012) (noting, in habeas context, that "[a] court is not at liberty . . . to bypass, override, or excuse a State's deliberate waiver of a limitations defense.") (citation omitted).

*Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citation omitted). "Due process," however, "does not require that a property owner receive actual notice before the government may take his property." *Jones v. Flowers*, 547 U.S. 220, 226 (2006) (citing *Dusenbery v. United States*, 534 U.S. 161, 170 (2002)). A state actor need only provide "'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).[7]

In "emergency situations," moreover, notice and hearing requirements yield to the exigencies of "summary administrative action." *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 299-300 (1981) (collecting cases). "[W]here a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." *Gilbert v. Homar*, 520 U.S. 924, 931 (1997) (collecting cases). "Protection of the health and safety of the public is a paramount governmental interest which justifies summary administrative action. Indeed, deprivation of property to protect the public health and safety is '[o]ne of the oldest examples' of permissible summary action." *Hodel*, 452 U.S. at 300 (quoting *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 599 (1950)). In such cases, "[t]he relevant inquiry is not whether a [summary action] order should have been issued . . . , but whether the statutory procedure itself is incapable of affording due process." *Id.* at 302 (citation omitted).[8]

---

[7] Although courts generally analyze procedural due process claims under the well-known *Mathews v. Eldridge* balancing test, 424 U.S. 319, 335 (1976), the Supreme Court clarified in *Dusenbery* that *Mullane*'s reasonable-under-the-circumstances standard applies to such claims premised on allegedly inadequate notice. *See* 534 U.S. at 167-68.

[8] *See also Ewing*, 339 U.S. at 599 ("Discretion of any official may be abused. Yet it is not a requirement of due process that there be judicial inquiry before discretion can be exercised. It is sufficient, where only property rights are concerned, that there is at some stage an opportunity for a hearing and a judicial determination." (collecting cases)).

No. 11-50333

Kinnison challenged only the manner in which the City applied the Ordinance in his specific case; he made no cognizable argument that the Ordinance was facially unconstitutional.[9]  The Ordinance contains several procedural protections.  It requires that two of three designated City officials concur that, "due to one or more structural conditions threatening [its] structural integrity," a specific property presents an "imminent danger to the life, safety or property of any person."  Before demolition may occur, the officials must also agree that "under the circumstances no other abatement procedure is reasonably available."  The Ordinance also exists against a backdrop of the City's Residential Building Codes, which are based on International Building Code standards.  *See* San Antonio, Tex., Code of Ordinances part II, ch. 6 ("Buildings").  For summary judgment purposes, then, the Ordinance was presumptively constitutional, and the City was permitted to rely upon it.

In the absence of a deficient procedural regime, a procedural due process claim may nonetheless succeed if the state actor unreasonably decided to summarily effect a property deprivation.  *See Patel v. Midland Mem. Hosp. & Med. Ctr.*, 298 F.3d 333, 341 (5th Cir. 2002) ("When determining the amount of process constitutionally due [the plaintiff] prior to the [property deprivation], the key question is not whether [the plaintiff] was *actually* a danger, but whether the [state actor] had reasonable grounds for suspending him as a danger." (citing

---

[9] In the substantive due process section of his motion for summary judgment, Kinnison asserted that the Ordinance was "so vague, . . . so teleologically non-functional, and . . . so arbitrarily applied" that it failed constitutional muster, contending primarily that it did not define when a structure posed an "imminent danger."  However, the City's Code of Ordinances extensively defines "dangerous building," § 6-156, and the Ordinance refers to "dangerous buildings or structures."  The Ordinance, moreover, narrows the definition of "dangerous buildings."  A "dangerous building" requiring summary abatement under the Ordinance is one that has "one or more structural conditions threatening [its] structural integrity" and that poses a "clear and imminent danger . . . unless . . . immediately repaired or demolished."  The district court granted summary judgment for the City on Kinnison's substantive due process claim, and Kinnison did not cross-appeal.

*Gilbert*, 520 U.S. at 933)).  Evaluating such claims, however, requires striking a delicate balance.  Generally, a state actor's adherence to its summary-action procedures deserves deference.  *See, e.g.*, *Freeman v. City of Dallas*, 242 F.3d 642, 653 & n.18 (5th Cir. 2001) (en banc) (observing that the "ultimate test of reasonableness is fulfilled . . . by the City's adherence to its ordinances and procedures as a prelude to" abatement; "a showing of unreasonableness in the face of the City's adherence to its ordinance is a 'laborious task indeed'" (quoting *Soldal v. Cook Cnty.*, 506 U.S. 56, 71 (1992))).  Courts must avoid "subjecting a decision to invoke an emergency procedure to an exacting hindsight analysis, where every mistake, even if made in good faith, becomes a constitutional violation."  *Catanzaro v. Weiden*, 188 F.3d 56, 63 (2d Cir. 1999) (reh'g op.).  Courts instead should exercise restraint and second-guess an emergency action only when shown to be arbitrary or an abuse of discretion.  *See WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 51 (2d Cir. 2009) (citation omitted).

With these principles in mind, we turn to the district court's procedural due process ruling.  The district court granted Kinnison summary judgment because it concluded that Kinnison's identity was readily available to the City; that the City was required to give Kinnison at least constructive notice of the demolition; that the passage of nine days between inspection and demolition was near-dispositive evidence that the City's imminent-danger determination was unreasonable; and that pre-deprivation process was available under the Texas nuisance-abatement statute.[10]

---

[10] The district court also was concerned that cities could circumvent Texas nuisance-abatement procedural protections merely by characterizing a property as an "imminent danger" rather than a "nuisance."  The Supreme Court has suggested an antidote to this concern.  *See Hodel*, 452 U.S. at 302 & n.46 (observing that courts may step in "if a pattern of abuse and arbitrary action [is] discernible from review of an agency's administration of a summary procedure").

No. 11-50333

Texas nuisance-abatement law does require municipalities to search deed records to ascertain the owner's identity and to provide owners notice of pending nuisance actions. *See* Tex. Loc. Gov't Code § 214.001(q)(1). It is undisputed that the City gave no notice of any kind to Kinnison and never searched the deed records to find him, despite knowing that the property had a new owner.

The City contends that the imminent-danger determination justified proceeding without notice or process. *See id.* § 214.002.[11] If that determination was unreasonable, however, the City would have been required to give Kinnison notice, and he would have had the right to administratively challenge any threatened property deprivation. Thus, the City's actions may be excused for procedural due process purposes only if the imminent-danger determination was not an abuse of discretion. *See Patel*, 298 F.3d at 341 (emphasizing that a procedural due process inquiry focuses on whether the state actor's danger determination was reasonable, not on whether an actual danger existed).

Turning to the record here, the City points to evidence that City employees carried out the Ordinance in light of the City's building-related standards and based on evidence gathered from multiple inspections of the Property. The employees were certified inspectors and authorized to make demolition recommendations.[12] In their view, the Property posed an "imminent danger"

---

[11] Section 214.001 and its associated statutes govern, among other things, the "demolition" of "dilapidated" and "substandard" structures that are "unfit for human habitation and a hazard to the public health, safety, and welfare." Tex. Loc. Gov't Code § 214.001(a)(1). These include procedural protections such as a conjunctive list of records a municipality must search to identify a property's true owner, *id.* § 214.001(q), pre-deprivation notice and hearing requirements, *id.* § 214.001(c)-(h), ordinance-content standards, *id.* § 214.001(b), and an express judicial-review provision. *Id.* § 214.0012.

Section 214.002, however, applies "[i]f the governing body of a municipality finds that a building . . . is *likely to endanger* persons or property." *Id.* § 214.002(a) (emphasis added). Unlike section 214.001—and reflecting the exigencies of summary abatement—section 214.002 contains none of the above procedural protections.

[12] Kinnison attacks the inspectors' credentials, but this is insufficient to create a fact issue as to the imminent-danger determination. *See Patel*, 298 F.3d at 340 n.14.

under the Ordinance. The appropriate officials concurred with that assessment and determined that summary abatement was the only available method to deal with the threat. The City therefore arguably complied with the Ordinance,[13] a fact that normally would counsel that we reverse and render judgment in the City's favor.[14] *See Traylor v. City of Amarillo*, 492 F.2d 1156, 1158 (5th Cir. 1974) (noting, in nuisance abatement case, that where "the city proceeded under authority of state law and pursuant to local ordinances which not only explicitly define[d] the procedures to be followed, but also outline[d] with some specificity the conditions under which property [was] subject to demolition," the facts presented "a far cry from . . . ad hoc, summary action").

We cannot do so, however, because the record contains evidence suggesting that the City's imminent-danger determination was an abuse of discretion. The

---

[13] Kinnison argues that the two officials who ordered the demolition failed to personally "view" the Property, making the City's actions unreasonable *per se.* The Ordinance requires that demolition occur "not later than seventy two (72) weekday hours . . . after the official views the subject building or structure." The officials apparently based their determinations on inspection reports, structural assessments, photographs, and a video. Because we conclude that a fact issue exists concerning the reasonableness of the City's imminent-danger determination, we do not address the consequences of the City's potential noncompliance with the Ordinance's "viewing" requirement, which the district court may consider on remand.

Kinnison also suggests that the City violated the Ordinance because it effected the demolition more than seventy-two hours after Guajardo viewed the Property. The Ordinance, however, uses the phrase "the official" as a term of art, limiting its reference to "the code compliance director, the fire chief, or the director of development services." Guajardo was not one of these officials. Accordingly, whatever effect the 72-hour temporal limitation on "viewing" may have, it depends on the conduct of officials other than Guajardo. As to any defects in the Ordinance itself, Kinnison does not facially challenge the Ordinance on appeal.

[14] The City argues that Kinnison was required to plead and prove the inadequacy of state-law remedies in order to bring a procedural due process claim. *See Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Because Kinnison complains of a property deprivation effected by City employees acting with authorization and pursuant to procedures enacted by the City, however, *Parratt* and its progeny do not apply here. *See Zinermon v. Burch*, 494 U.S. 113, 138 (1990) (rejecting *Parratt*'s application where the state actor "delegated to [its employees] the power and authority to effect the" alleged deprivation and the "concomitant duty to initiate the [state-law] procedural safeguards") (internal quotation marks and citation omitted).

district court's due process ruling properly focused on the nine-day delay between inspection and demolition. Such delays can serve as evidence of unreasonableness if lengthy enough to call into question "the existence *vel non* of an emergency." *Burtnieks v. City of New York*, 716 F.2d 982, 988 (2d Cir. 1983) (three-month delay); *see also Kornblum v. St. Louis Cnty.*, 72 F.3d 661, 664 (8th Cir. 1995) (en banc) (delay of over a year).

Although closer to the short delays in *WWBITV* and *Catanzaro*, we cannot hold that the nine-day delay here was brief enough to make the City's imminent-danger determination reasonable as a matter of law.[15] Among other things, the record suggests that the City had previously determined the Property to be an imminent danger in 2006 for largely the same reasons justifying the 2008 demolition.[16] The Property, however, was not summarily abated after the 2006 determination in part because the City informed the Property's then-owner of the deficiencies, and he made repairs significant enough to forestall demolition. Kinnison, however, was not afforded the same opportunity in 2008, despite the fact that the same structural deficiencies identified in 2006 had yet to cause the Property's ostensibly "imminent" collapse. The City, moreover, effected the demolition even though Kinnison's contractor was on-site and repairing the Property *when the demolition crew arrived.* However faithfully the City adhered to the Ordinance—an issue that may be in dispute—a reasonable factfinder could conclude that it was an abuse of discretion to classify the Property as an imminent danger based on long-present factors and then to summarily abate the Property in the face of the owner's rehabilitation efforts. *Cf. Flowers*, 547 U.S.

---

[15] The demolitions in *WWBITV* and *Catanzaro* were effected within forty-eight hours.

[16] In 2006, another City inspector identified the same structural defects as Guajardo and Carrillo and determined that the Property had partially collapsed and had "the potential of further collapse onto the neighbors [sic] premises." Besides the then-owner's repairs, the record suggests that demolition was cancelled because of historical-preservation concerns.

at 229-31 (faulting state actor, in adequacy-of-notice case, for not altering course after learning that the chosen method of notice had failed; due process may require "further reasonable steps" under the circumstances).

On the other hand, it was undisputed that the Property was damaged. The inspectors conducted a reasonably thorough investigation, and the City arguably adhered to the Ordinance. A factfinder could also reasonably conclude that these facts, among others, outweigh any evidence of procedural unreasonableness. *See Patel*, 298 F.3d at 340 & n.14 (noting that, even if "a more thorough investigation would have" dispelled the existence of a danger, that fact generally is insufficient to make unreasonable a determination based on evidence gathered as part of a good faith investigation). Thus, Kinnison's procedural due process claim should have been allowed to proceed to trial.[17]

---

[17] Kinnison urges us to affirm based on the Texas Supreme Court's recent decision in *City of Dallas v. Stewart*, 361 S.W.3d 562 (Tex. 2012) (reh'g op.). *Stewart* held that, "[i]n the context of a property owner's appeal of an administrative nuisance determination, independent court review is a [Texas] constitutional necessity." *Id.* at 564. In Kinnison's view, *Stewart* mandates affirmance because the City failed to afford him pre-deprivation judicial review. Kinnison also argues that Texas law requires municipalities to reaffirm nuisance determinations on the day of demolition. *See City of Houston v. Crabb*, 905 S.W.2d 669 (Tex. App.—Houston [14th Dist.] 1995, no writ).

Section 1983, however, is concerned with *federal* constitutional violations, and we examine the constitutional adequacy of state procedures under federal law. *See, e.g.*, *Traylor*, 492 F.2d at 1158 ("Whatever the status of these decisions as statements of the law of Texas, we do not believe that such a [pre-deprivation judicial review] requirement is imposed by the federal constitutional guarantee of due process.").

*Stewart* nonetheless does lend persuasive authority to the due process analysis deployed here. It notes that takings-style claims "typically involve mixed questions of fact and law." 361 S.W.3d at 578. As to the factual component, "initial questions of historical fact—whether or not the structure had foundation damage, for example," lie "within the competence of the administrative agency and are accorded deference." *Id.* The next step, however, "applies those historical facts to the legal standards," creating "questions of law that determine the constitutionality of a property's demolition" and that "are outside the competence of administrative agencies." *Id.* Thus, for our purposes, the presence of an investigation does not require us to conclude that the imminent-danger determination satisfied procedural due process as a matter of law.

### *C. Fourth Amendment Unreasonable Seizure Claim*

"As the text of the Fourth Amendment indicates, the ultimate measure of the constitutionality of a government search is 'reasonableness.'" *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995).   "[A] 'reasonableness' determination[] involves a balancing of all relevant factors," *Whren v. United States*, 517 U.S. 806, 817 (1996), and for Fourth Amendment purposes generally "requires no more of government officials than that of due process of law.  Both constitutional provisions recognize an exigency exception, and, thus, lead to no practical distinction in" the summary action context.  *Flatford v. City of Monroe*, 17 F.3d 162, 170 (6th Cir. 1994) (citing *United States v. James Daniel Good Real Prop.*, 510 U.S. 43 (1993)); *see also Freeman*, 242 F.3d at 652 (noting that Supreme Court precedent "forecasts, even if it does not compel, that a balancing of the public and private interests at stake will favor the public interest in nuisance abatement after the conclusion of adequate administrative proceedings" (citing *GM Leasing Corp. v. United States*, 429 U.S. 338 (1977))).

We see no reason to depart from the general practice of tethering the outcome of the Fourth Amendment inquiry to whether the property deprivation offended due process.  In light of the procedural due process analysis above, we conclude that the district court should not have granted summary judgment on Kinnison's Fourth Amendment claim.  *Cf. Samuels v. Meriwether*, 94 F.3d 1163, 1168 (8th Cir. 1996) ("[A]n abatement carried out in accordance with procedural due process is reasonable in the absence of any factors that outweigh governmental interests.") (citations omitted).

### IV. Conclusion

Because a fact issue exists as to the reasonableness of the City's imminent-danger determination, we VACATE the judgment below and REMAND for

proceedings consistent with this opinion. We therefore need not reach the City's other arguments presented on appeal.[18]

---

[18] In the event that the factfinder imposes liability on the City, the factfinder should also determine the damages flowing from that conduct. As a result, we vacate the entirety of the judgment such that the City's challenges to the original damages award are now moot.