# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 23, 2013

No. 11–50626

Lyle W. Cayce
Clerk

RBIII, L.P.,

Plaintiff - Appellee

v.

CITY OF SAN ANTONIO,

Defendant - Appellant

Appeals from the United States District Court
for the Western District of Texas

Before DeMOSS, SOUTHWICK, and HIGGINSON, Circuit Judges.

DeMOSS, Circuit Judge:

This appeal arises from a dispute between the City of San Antonio (the "City") and RBIII, L.P. ("RBIII"). On January 10, 2008, the City demolished a dilapidated building (the "Structure") located at 814 South Nueces Street (the "Property") in San Antonio, Texas. It is undisputed that the City did not provide notice to RBIII, the owner of the Property, before razing the Structure. RBIII filed suit against the City, asserting a host of state and federal claims. The district court granted summary judgment for the City on all claims except a Fourteenth Amendment procedural due process claim and a Fourth Amendment unreasonable search and seizure claim. Those claims were tried to a jury, which returned a verdict in favor of RBIII. The City appeals.

No. 11-50626

## I.

### A.

On December 27, 2007, Irma Ybarra, a code enforcement officer of the City, drove by the Property in response to a neighbor's complaint that the Structure was unsecured and dilapidated. Ybarra conducted a more thorough inspection on December 28, 2007. She found that, in addition to being vacant and unsecured, the Structure smelled of mold and exhibited fire and water damage, including holes in the ceilings, walls, and floors. Ybarra also found evidence of unauthorized people coming and going from the Structure, including trash, graffiti, missing fixtures, and an unhinged gate.

Based on her inspection, Ybarra determined that the Structure had become a harbor for unauthorized persons, was in danger of collapsing, and was too unstable to attempt to secure. She requested that a building inspector review the Structure. Ramiro Carillo, a certified building inspector working for the City, examined the Structure on December 28, the same day Ybarra conducted her inspection. He concluded that the foundation, walls, and roof components were in extremely poor condition and that the Structure constituted an "imminent threat to life, safety, and/or property, requiring immediate demolition." He also concluded that "no other abatement procedure was reasonably available under the circumstances."

Carillo presented his report and photographs of the Structure to Roderick Sanchez, the director of the City's Planning and Development Services Department, and recommended the Structure for emergency demolition. After reviewing the report and photographs, Sanchez concurred in Carillo's recommendation. David Garza, the director of the City's Housing and

No. 11-50626

Neighborhood Services Department, also concurred in the recommendation after reviewing photographs of the Structure and conferring with a member of his staff who had visited the Property. On January 3, 2008, Carillo and Garza each signed affidavits stating that it was his determination that the Structure "presented a clear and imminent threat to life, safety, and/or property necessitating an immediate demolition" and that "no other abatement procedure was reasonably available under these circumstances." Carillo and Garza re-executed identical affidavits on January 7, 2008.

Ybarra obtained an environmental survey from the City's Environmental Services Department and also notified the City's Historic Preservation Office of the planned demolition. She arranged to have the gas and electricity service cut-off. She also searched the City's permit records and determined that no permits had been obtained to repair the Structure. She revisited the Property on January 9, 2008 to confirm that no repair work had been done. The Structure was demolished on January 10, 2008.[1] The next day, the City sent a notice to RBIII informing it that the City had demolished the Structure as an "Emergency Case." It is undisputed that the City did not provide notice to RBIII of the pending demolition of the Structure at any time between December 28 and January 10.

---

[1] The City presented evidence that the reason thirteen days passed between the initial inspection and the demolition was that the City needed to ensure that the demolition could proceed safely while operating with only a "skeleton crew" during the holiday season. RBIII questioned the City's explanation and suggested that the City could have demolished the Structure sooner, but did not argue that the City delayed the demolition intentionally or in bad faith.

3

No. 11-50626

## B.

RBIII filed suit against the City and Ibarra's supervisor, Reyes Hernandez, in the 228th Judicial District Court of Bexar County on January 28, 2009 alleging claims under local, state, and federal law.[2] The City filed a notice of removal to federal court. The district court granted summary judgment in favor of Hernandez on all of RBIII's claims. The district court granted summary judgment in favor of the City on all claims except for two: (1) that the City violated RBIII's Fourteenth Amendment right to procedural due process by demolishing the Structure without providing notice, and (2) that the City unreasonably seized the Structure in violation of the Fourth Amendment.

The court also held at the summary judgment stage that the City had complied with San Antonio Code of Ordinances § 6-175 (the "Ordinance"), which governed summary demolitions. The Ordinance, which has since been repealed, provided that the City could demolish dangerous structures without prior notice to the owner when "due to one or more structural conditions threatening the structural integrity of a building, there is a clear and imminent danger to the life, safety or property of any person." Two of three designated officials, including the Director of Development Services, had to concur in the determination that the building posed an imminent threat. The Ordinance also required that the two officials find that "no other abatement procedure is reasonably available except demolition." The demolition had to occur within 72 hours of when an official viewed the building and the owner of the building had

---

[2] RBIII brought its federal constitutional claims pursuant to 42 U.S.C. § 1983, but the City has not raised a defense based on *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) in its appellate briefing. For the reasons set forth in *Kinnison v. City of San Antonio*, 480 F. App'x 271, 274-76 (5th Cir. 2012), we hold that the City has waived any *Monell* defense with respect to this appeal.

No. 11-50626

to be notified after the demolition.[3]

## C.

The district court held a jury trial on RBIII's Fourth and Fourteenth Amendment claims from March 28 to March 30, 2011. The jury found in favor of RBIII on both claims and awarded $27,500 in damages. On appeal, the City argues, among other things, that the district court's jury instructions did not accurately reflect the applicable law and that, under the correct legal standards, it was entitled to judgment as a matter of law.

## II.

## A.

While the Fourteenth Amendment's Due Process Clause generally requires that the State provide an opportunity to be heard before it takes property, predeprivation notice is not always required. *Gilbert v. Homar*, 520 U.S. 924, 930 (1997). In particular, where the State acts to abate an emergent threat to public safety, postdeprivation process satisfies the Constitution's procedural due process requirement. *See Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 301-03 (1981); *see also Gilbert*, 520 U.S. at 930 ("[W]here a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause."). Determining whether a pre-notice deprivation of property comports with procedural due process therefore requires an evaluation of (1) the State's determination that there existed an emergency situation necessitating quick action and (2) the adequacy of postdeprivation process. *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 417-420 (3d Cir.

---

[3] For the full text of the Ordinance, see *Kinnison*, 480 F. App'x at 272-73.

2008); *Catanzaro v. Weiden*, 188 F.3d 56, 61-62 (2d Cir. 1999).

How the fact-finder approaches the first issue depends on whether the State acted pursuant to a valid summary-action ordinance. If it did, then the State's determination that it was faced with an emergency requiring a summary abatement is entitled to deference. *Catanzaro*, 188 F.3d at 62-63; *see also Kinnison v. City of San Antonio*, 480 F. App'x 271, 277 (5th Cir. 2012); *Elsmere Park Club,* 542 F.3d at 418. In such cases, the relevant inquiry is not whether an emergency actually existed, but whether the State acted arbitrarily or otherwise abused its discretion in concluding that there was an emergency requiring summary action. *See Patel v. Midland Mem. Hosp. & Med. Ctr.*, 298 F.3d 333, 341 (5th Cir. 2002) (holding that the "key question" in a pre-notice deprivation case is not whether there "was *actually* a danger" but whether the State had reasonable grounds for believing that a danger existed requiring summary action); *Elsmere Park Club*, 542 F.3d at 416, 420 (holding that district court erred in finding procedural due process violation solely on the basis that "the Town failed to present sufficient evidence of exigent circumstances" (internal quotation marks omitted)). This deference derives from the concern that "subjecting a decision to invoke an emergency procedure to an exacting hindsight analysis, where every mistake, even if made in good faith, becomes a constitutional violation, [would] encourage delay and thereby potentially increase the public's exposure to dangerous conditions." *Catanzaro*, 188 F.3d at 63.

With respect to the second issue—the adequacy of postdeprivation process—RBIII has not pled or otherwise argued that the postdeprivation

remedies available to it were procedurally inadequate.[4] While RBIII's failure to do so is not fatal to its procedural due process claim,[5] it does limit that claim to an attack on the City's determination that the Structure presented a public emergency requiring summary abatement. *See Catanzaro*, 188 F.3d at 64.

## B.

The Fourth Amendment requires that any seizure of property by the State be reasonable. *New Jersey v. T.L.O.,* 469 U.S. 325, 340 (1985) ("The fundamental command of the Fourth Amendment is that searches and seizures be reasonable . . . ."). "[T]he Fourth Amendment reasonableness of a seizure and demolition of nuisance property will ordinarily be established when the substantive and procedural safeguards inherent in state and municipal property standards

---

[4] At trial, neither party presented evidence on the issue of postdeprivation remedies. In its brief on appeal, RBIII argues that although it pled all available state and local remedies in its original complaint, the district court granted summary judgment in favor of the City on those claims. RBIII also argues that it could not sue the City for inverse condemnation because the district court held that the Structure was a nuisance and granted summary judgment to the City on RBIII's takings claims. Nowhere, however, does RBIII claim that its postdeprivation remedies were procedurally inadequate. In particular, even if RBIII is correct that it would have lost an inverse condemnation suit due to the district court's nuisance finding, RBIII does not explain why it follows that inverse condemnation is a procedurally inadequate postdeprivation remedy. The Due Process Clause entitles RBIII to an opportunity to heard, not a successful outcome.

[5] As the panel in *Kinnison* correctly noted, where a plaintiff "complains of a property deprivation effected by City employees acting with authorization and pursuant to procedures enacted by the City," there is no requirement "to plead and prove the inadequacy of state-law remedies in order to bring a procedural due process claim." 480 F. App'x at 279 n.14; *see also Zinermon v. Burch*, 494 U.S. 113, 117, 138-39 (1990) (holding that plaintiff was not required to plead inadequate postdeprivation remedies where complained of conduct by public officials was not "random and unauthorized" but undertaken pursuant to statutorily delegated authority); *Mitchell v. Fankhauser*, 375 F.3d 477, 483-84 (6th Cir. 2004) (holding that where plaintiff was deprived of property pursuant to established state procedures and not by the random or unauthorized acts of state officials, plaintiff was not required to plead inadequate postdeprivation remedies in order to bring a procedural due process claim).

No. 11-50626

ordinances have been fulfilled." *Freeman v. City of Dallas*, 242 F.3d 642, 654 n.17 (5th Cir. 2001) (en banc). Because the Fourth Amendment generally requires no more than due process of law in summary abatement cases, the outcome of a Fourth Amendment claim depends on whether the seizure complied with due process. *See Flatford v. City of Monroe*, 17 F.3d 162, 170 (6th Cir. 1994) (citing *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 71 (1992)); *see also Kinnison*, 480 F. App'x at 281 (finding "no reason to depart from the general practice of tethering the outcome of the Fourth Amendment inquiry to whether the property deprivation offended due process").

**III.**

**A.**

On appeal, the City argues that the district court provided erroneous instructions to the jury. With respect to the due process claim, the instructions read in relevant part:

> Under the Fourteenth Amendment's Procedural Due Process Clause, a property owner is entitled to notice and/or a hearing before being deprived of its property. In this case, the parties do not dispute that the City did not provide notice to RBIII before demolition.

> In some cases, property may be seized without providing prior notice. The emergency situations in which it is considered reasonable to proceed without giving prior notice are generally limited to situations in which there is an immediate danger to public. You must consider all the facts presented to you in order to determine whether the circumstances in the instant case excused the City from providing notice to RBIII before demolishing the property.

No. 11-50626

The court's instructions on the Fourth Amendment claim, in relevant part, read as follows:

> Assessing the reasonableness of the seizure involves a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake. It entails weighing a number of factors, including the danger posed by a building to public safety. The private interests at stake include the right to personal property. Here, the City argues that the immediate demolition of RBIII's property was necessary and reasonable due to the condition of the structure. Considering all facts presented to you, you must weigh the public and private interests at stake, and determine whether RBIII has proved by a preponderance of the evidence that the City's destruction of the property was unreasonable.

The City argues, as it did in the district court, that the jury charge should have stated that the City's decision to invoke its emergency powers under the Ordinance was entitled to deference and that the City's compliance with the Ordinance was proof of the reasonableness of its actions.

## B.

"We review jury instructions for an abuse of discretion." *Carrizales v. State Farm Lloyds*, 518 F.3d 343, 348 (5th Cir. 2008). To establish error, the City must show that "the instruction as a whole 'creates substantial doubt as to whether the jury was properly guided.'" *Id.* (quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 659 (5th Cir. 2002)); *see also Smith v. Xerox Corp.*, 602 F.3d 320, 325 (5th Cir. 2010) ("In reviewing the jury charge we ask whether the jury charge properly stated the applicable law and, if not, whether the challenged instruction affected the outcome of the case.").

No. 11-50626

## C.

RBIII's procedural due process claim did not challenge the Ordinance itself, but rather the City's application of the Ordinance to the particular circumstances of this case.[6] Because the City acted pursuant to the Ordinance, its decision to demolish the Structure on an emergency basis was entitled to deference and did not violate RBIII's right to procedural due process unless it was arbitrary or an abuse of discretion. *See Catanzaro*, 188 F.3d at 62 (holding that where plaintiff does not challenge the validity of emergency demolition procedure, "there is no constitutional violation unless the decision to invoke the emergency procedure amounts to an abuse of the constitutionally afforded discretion"); *see also Kinnison*, 480 F. App'x at 278 (holding that demolition without notice "may be excused for procedural due process purposes only if the imminent-danger determination was not an abuse of discretion"); *WWBITV, Inc. v. Village of Rouses Point*, 589 F.3d 46, 51 (2d Cir. 2009) ("[W]here an adequate post-deprivation process exists, an official reasonably believing on the basis of competent evidence that there is an emergency does not effect a constitutional violation by ordering a building demolition without notice or a hearing."); *Elsmere Park Club*, 542 F.3d at 418 ("Thus, in analyzing the Town's decision to condemn summarily the apartments, we look to whether there was competent

---

[6] RBIII did argue in the district court that the ordinance was "unconstitutionally vague," but only in connection with its equal protection and substantive due process claims. Because the City repealed the Ordinance after RBIII filed suit, the district court dismissed RBIII's vagueness claim as moot. RBIII did not thereafter seek a ruling from the district court on the constitutionality of the Ordinance and it has not cross-appealed the district court's order dismissing its vagueness claim. Given those circumstances, we have no hesitation in following the approach of the *Kinnison* panel, which, faced with substantially the same facts, held that the plaintiff's procedural due process claim "challenged only the manner in which the City applied the Ordinance in his specific case." *See Kinnison*, 480 F. App'x at 277 & n.9.

evidence supporting the reasonable belief that the mold situation presented an emergency, and to whether the Town's actions were otherwise arbitrary or an abuse of discretion." (internal quotation marks omitted)).

The district court, however, instructed the jury that the City was excused from providing notice to RBIII only if there was "an immediate danger to the public," making no mention of the City's compliance with the Ordinance or the discretion resulting therefrom. By doing so, the court improperly cast the central factual dispute as whether or not the Structure posed an immediate danger to the public, when the issue should have been whether the City acted arbitrarily or abused its discretion in determining that the Structure presented an immediate danger. *See Patel*, 298 F.3d at 341; *see also WWBITV, Inc.*, 589 F.3d at 51 ("Whether the official abused his discretion or acted arbitrarily in concluding that a genuine emergency exists is a factual issue . . . ."). Because this error in the instructions misled the jury as to the central factual question in the case, we must vacate the district court's judgment on RBIII's due process claim and remand for further proceedings. *See Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005) (vacating verdict where erroneous instructions misled the jury as to "the ultimate question in the case"); *see also Carrizales*, 518 F.3d at 351 (remanding for new trial where district court erroneously instructed jury on factual finding necessary for liability).

This error in the jury instructions affected not only RBIII's due process claim, but also its Fourth Amendment claim. While the instructions on the Fourth Amendment claim properly focused on the reasonableness of the City's decision to demolish the Structure without notice, the court's instruction on the due process claim would have led the jury to believe that such a decision can

only be reasonable when there is actually "an immediate danger to public." As such, the instructions (1) improperly shifted the jury's focus from the reasonableness of the City's determination that the Structure posed a public emergency to the accuracy of that determination, *cf. Freeman*, 242 F.3d at 654 (holding that in a summary abatement case "Fourth Amendment reasonableness means non-arbitrariness"), and (2) failed to inform the jury that the City's compliance with the Ordinance was relevant to the question of the reasonableness of the City's actions, *see id.* at 653 (holding that the "ultimate test of reasonableness" was met by "the City's adherence to its ordinances and procedures" prior to abatement); *see also id.* at 654 n.18 ("[A] showing of unreasonableness in the face of the City's adherence to its ordinance is a 'laborious task indeed.'" (quoting *Soldal*, 506 U.S. at 71)).

The incorrect instruction on the due process claim further implicated the jury's consideration of RBIII's Fourth Amendment claim because "an abatement carried out in accordance with procedural due process is reasonable in the absence of any factors that outweigh governmental interests." *Samuels v. Meriwether*, 94 F.3d 1163, 1168 (8th Cir. 1996). Indeed, factors favoring the plaintiff will generally not outweigh the government's interest when it effects a procedurally adequate summary deprivation. *Freeman*, 242 F.3d at 652; *see also Kinnison*, 480 F. App'x at 280-281 ("A reasonableness determination involves a balancing of all relevant factors, and for Fourth Amendment purposes generally requires no more of government officials than that of due process of law. Both constitutional provisions recognize an exigency exception, and, thus, lead to no practical distinction in the summary action context." (internal alterations, citations and question marks omitted)). Because the due process jury

instructions gave the erroneous impression that the reasonableness determination depended entirely on whether an emergency actually existed and because the result of the due process inquiry affects the outcome of the Fourth Amendment claim, we must vacate the district court's judgment on RBIII's Fourth Amendment claim as well.

## IV.

The City argues that, when viewed against the proper standards for Fourth and Fourteenth Amendment liability, the evidence presented at trial entitled it to judgment as a matter of law. It is apparent from the erroneous jury instructions, however, that the district court misapprehended the factors governing the outcome of the claims at issue when it ruled on the City's motion for judgment as a matter of law. Given the district court's greater familiarity with the factual record in this case, we find it appropriate to remand the case for reconsideration of the City's motion for judgment as a matter of law not inconsistent with this opinion and for further proceedings as necessary. *See, e.g.*, *Olin Corp. v. Certain Underwriters at Lloyd's London*, 468 F.3d 120, 131-32 (2d Cir. 2006) (vacating judgment due to erroneous jury instructions and remanding for reconsideration of motion for judgment as a matter of law). Because we vacate the trial court's judgment against the City, we need not consider the other issues raised in the City's appeal. *See Septimus*, 399 F.3d at 612.


VACATED AND REMANDED